UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALENTINA P. FOKINA,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

Defendant.

Case No. C16-1279-RAJ

**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Valentina P. Fokina seeks review of the Administrative Law Judge's (ALJ's) decision finding her ineligible to receive Supplemental Security Income (SSI) benefits paid between June 2009 and November 2012 due to excess resources. Tr. 29. Ms. Fokina contends the ALJ erred by including an apartment in Russia (the Subject Property) as a countable resource for the purposes of determining her eligibility for SSI benefits. Dkt. 10 at 6. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 1

In May 2009, Ms. Fokina applied for benefits, alleging disability as of October 1, 2008. Tr. 25. Although the Social Security Administration (SSA) denied Ms. Fokina's application, ALJ Verrell Dethloff issued a decision March 25, 2011, finding her disabled. Tr. 51-55. On August 12, 2012, Ms. Fokina submitted redetermination information for continued eligibility in which she reported for the first time owning an apartment in Russia worth $20,000.00. Tr. 25, 66-69. SSA issued a notice informing Ms. Fokina she was not eligible for SSI because her resources exceeded the maximum $2,000.00. Tr. 80-93. Ms. Fokina had been receiving benefits from June 2009 until they were ceased in November 2012. Tr. 25. Ms. Fokina's request for reconsideration was denied at the agency level and she requested a hearing before an ALJ. *Id.* ALJ Mary Gallagher Dilly conducted a hearing and on November 27, 2013, issued a decision finding Ms. Fokina was not eligible to receive SSI benefits between June 2009 and November 2012 due to excess resources. Tr. 25-29.[2] The Appeals Council denied Ms. Fokina's request for review making the ALJ's decision the Commissioner's final decision. Tr. 6-9.[3]

## DISCUSSION

---

[2] As the ALJ notes, the record also contains a Notice of Overpayment dated March 6, 2013, informing Ms. Fokina she was overpaid $28,322.00 for the period of June 2009 to November 2012 due to excess resources above $2,000.00. Tr. 25, 107-109. While there is an overlapping issue between the determination that Ms. Fokina was ineligible for SSI and the subsequent determination that she received an overpayment, the issue before ALJ Gallagher, and now before this Court, is only the eligibility determination. Tr. 25-26. As the ALJ notes, the overpayment notice encompasses additional issues not present in the eligibility determination including the specific balance, duration, and calculation of the overpayment amount. *Id.* The overpayment notice also permits the individual to request a waiver of the overpayment amount which, in turn, raises issues including fault, ability to repay and detrimental reliance. *Id.* It does appear that on August 30, 2013, Ms. Fokina applied for a waiver of the overpayment. Tr. 273-276. Subsequent to ALJ Gallagher's November 2013 decision, in or around May 2014, SSA found Ms. Fokina was not at fault in receiving the overpayment but denied her application for a waiver because it was determined she was employed and capable of repaying the overpayment. Tr. 278-279. A $25.00 per month rate of recovery was established. *Id.* In this action, Ms. Fokina only challenges the ALJ's finding that she was ineligible to receive SSI benefits between June 2009 and November 2012, not the overpayment determination. Dkt. 10 at 5-6.

[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 2

1    Ms. Fokina argues the ALJ erred in finding the Subject Property was properly included as

2  a countable resource, thereby rendering her ineligible for SSI benefits. Dkt. 10 at 6. The Court

3  disagrees.

4    The Court may reverse an ALJ's decision only if it is not supported by substantial

5  evidence or if the ALJ applied the wrong legal standard. *See Molina v. Astrue*, 674 F.3d 1104,

6  1110 (9th Cir. 2012). Even then, the Court will reverse the ALJ's decision only if the claimant

7  demonstrates that the ALJ's error was harmful. *Id.* An unmarried claimant is ineligible for SSI

8  if her resources exceed $2,000.00. 20 C.F.R. §416.1205. "Resources" includes any real property

9  "an individual (or spouse, if any) owns and could convert to cash to be used for his or her

10  support and maintenance." 20 C.F.R. §416.1201(a). If the claimant "has the right, authority or

11  power to liquidate the property or his or her share of the property, it is considered a resource. If

12  a property right cannot be liquidated, the property will not be considered a resource of the

13  individual (or spouse)." 20 C.F.R. §416.1201(a)(1).

14    Here, substantial evidence supports the ALJ's finding that the Subject Property was a

15  countable resource, thereby rendering Ms. Fokina ineligible to receive SSI during the period in

16  question. Tr. 25-29; *see, e.g., Hong Jun Xun v. Colvin*, 651 Fed.Appx. 658, 660 (9th Cir. 2016)

17  (unpublished) (substantial evidence supported the ALJ's determination that the claimant did not

18  hold certain funds in trust for his brother and that the funds were properly considered a countable

19  resource in excess of the statutory maximum prescribed for SSI eligibility). Ms. Fokina does not

20  dispute that in 1996 she and her husband at the time, Aleksandr Fokin, purchased an apartment in

21  Belgorod, Russia (the Subject Property). Dkt. 10 at 2; Tr. 35. Ms. Fokina also does not dispute

22  that in 1998, she and Mr. Fokin executed a document entitled "Contract of Gift" (the Contract)

23  and by the terms of that document she "accept[ed] [the] gift" of the Subject Property from Mr.

1  Fokin. Tr. 157-158. The Contract indicates that the Subject Property was not "sold, gifted, [or]

2  promised to be gifted to a third party," and that Ms. Fokina "acquire[d] rights for said property

3  from the moment of State Registration of the present Contract." *Id.* The Contract further

4  "registered [Ms. Fokina] as an owner." *Id.* Ms. Fokina also possesses a certificate from a

5  passport clerk listing the Subject Property as her "permanently registered residence" since

6  January 1997. Tr. 163.

7      Although she does not dispute the existence of the Contract, Ms. Fokina contends the

8  ALJ should not have considered the Subject Property a countable resource because

9  "circumstances beyond her control prevented her from returning to Russia and converting the

10  Subject Property to cash." Dkt. 10 at 10. Specifically, Ms. Fokina indicates she is unable to

11  return to Russia due to fear of persecution. *Id.* Ms. Fokina testified generally that, although she

12  was Christian, because she had lived in a Muslim country (Kyrgyzstan), she received threats that

13  she should not move or go to Russia. Tr. 39-40. She also testified that her neighbors in Russia

14  had kidnapped and tortured her although it is unclear whether she attributes the motive for this to

15  the fact that she had lived in a Muslim country. *Id.*

16      The Court is not unsympathetic to Ms. Fokina's circumstances. However, the ALJ

17  considered these same arguments in her decision and reasonably concluded that Ms. Fokina

18  retained the right, authority and power to liquidate the Subject Property. While Ms. Fokina may

19  certainly have good reasons for not wishing to return to Russia, as the ALJ points out, she

20  maintains a Russian passport with no travel restrictions to or from the country.[4] Tr. 27.

21  Moreover, although Ms. Fokina claims she would have to return to Russia to sell the property,

22  _____

23  [4] The ALJ also notes that Ms. Fokina's refugee status in the United States is related to events in
Tajikistan. Tr. 28 n. 2.
ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 4

she presents no evidence that she has made any attempt to sell the property from the United

States, nor has she presented any evidence or articulated any concrete reasons why she would be

unable to do so. Tr. 40. As the ALJ points out, Ms. Fokina has continued to engage in Russian

transactions after leaving the country, including securing a divorce in 2011, and obtaining a

certificate of permanent residence status in 2013. Tr. 28. Under the circumstances, substantial

evidence supports the ALJ's conclusion that Ms. Fokina retained the right, power and authority

to liquidate the Subject Property and that it was properly considered a countable asset. *See*

*Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (per curiam) (When the evidence before the

ALJ is "susceptible of more than one rational interpretation, the decision of the ALJ must be

upheld.").

Ms. Fokina also argues the ALJ erred in finding "she had the legal ability to convert the

Subject Property to cash for her maintenance and support." Dkt. 10 at 12. Specifically, Ms.

Fokina argues that she and her husband acquired the Subject Property to give to their daughter,

Oksana (a minor at the time) "once they could legally put the title in her name." *Id.* at 13.

However, again, the ALJ considered this argument and reasonably rejected it. Specifically, the

ALJ notes that Oksana's name does not appear on the title of the property and, despite what may

have been Ms. Fokina's and Mr. Fokin's original intent in purchasing the property, there is no

evidence that Ms. Fokina ever legally transferred ownership of the property to her daughter. Tr.

27-28. Moreover, the terms of the Contract transferring ownership to Ms. Fokina specifically

state that the Subject Property was not "sold, gifted, [or] promised to be gifted to a third party"

and that Ms. Fokina alone acquired rights to the property. Tr. 157-158. While, again, Ms.

Fokina may have good reasons for not wishing to liquidate the property (i.e., to retain it for her

daughter's benefit), her argument fails to establish she lacks the right, authority or power to do so

1   and that the ALJ erred in including the Subject Property as a countable resource.

2          Ms. Fokina also contends the ALJ erred in failing to consider Russian law in determining

3   the legal effect of the transfer of the title from Mr. Fokin to Ms. Fokina, as well as Ms. Fokina's

4   legal ability to convert the Subject Property to cash for her maintenance and support.  Dkt. 10 at

5   14.  Ms. Fokina fails to establish the ALJ made any error of law.  The Court notes that it appears

6   Russian law recognizes donation contracts such as the Contract at issue wherein one party, the

7   donor, gratuitously transfers or promises the donee any object of value, and the donee in turn

8   agrees to accept and receive the thing of value.  *See* 24 Loy. L.A. Int'l & Comp. L. Rev. 113, 157

9   (March 2002); C. Civ. Art. 572 (Russ.).[5]  Ms. Fokina does not argue the Contract transferring

10  ownership to her was, in fact, invalid under Russian law, nor does she argue, much less cite to

11  any authority, demonstrating that she would be legally barred from liquidating the property under

12  Russian law for some other reason.  Rather, Ms. Fokina's argument is purely speculative.  As

13  such, Ms. Fokina fails to establish the ALJ erred in concluding that she alone has retained

14  ownership of the Subject Property since 1998, as well as the right, power and authority to

15  liquidate that property.  Tr. 28.

16         Ms. Fokina further argues the ALJ erred in considering the Subject Property a countable

17  resource because evidence shows litigation would be required in order to force a sale of the

18  Subject Property.  Dkt. 10 at 14-17.  Ms. Fokina contends the ALJ failed to follow the SSA's

19  Program Operations Manual System (POMS) SI 01120.010.C which provides that "[w]hen there

20  is a legal bar to sale of property (e.g., if a co-owner legally blocks sale of jointly-owned

21  property), we do not require an individual to undertake litigation in order to accomplish sale or

22

23  [5] The Civil Code of the Russian Federation Article 572, translated text available at
    https://www.wto.org/english/thewto_e/acc_e/rus_e/WTACCRUS48A5_LEG_119.pdf
    ORDER AFFIRMING THE
    COMMISSIONER'S FINAL DECISION AND
    DISMISSING THE CASE WITH PREJUDICE
    - 6

access." POMS SI 01120.010.C. The Ninth Circuit has held that POMS may be "entitled to

respect ... to the extent it provides a persuasive interpretation of an ambiguous regulation" but

"does not impose judicially enforceable duties on either this court or the ALJ." *Kennedy v.*

*Colvin*, 738 F.3d 1172, 1177 (9th Cir. 2013) (internal citation and quotation marks omitted).

However, Ms. Fokina offers no evidence, beyond speculative arguments, that litigation would be

required to liquidate the Subject Property. Ms. Fokina makes the conclusory assertion that when

her marriage dissolved, her ex-husband, Mr. Fokin, became a tenant in common of the Subject

Property and, therefore owns an undivided one-half interest in that property. Dkt. 10 at 14.

However, Ms. Fokina cites no evidence demonstrating Mr. Fokin retained any interest in the

Subject Property nor does she cite to any law supporting this contention. Furthermore, this

argument is contrary to the terms of the Contract indicating Mr. Fokin transferred ownership of

the property to Ms. Fokina alone. Tr. 157-158. Mr. Fokin submitted an affidavit indicating that

he and Ms. Fokina originally purchased the Subject Property for their daughter. Tr. 154.

However, Mr. Fokin does not state he believes that either he or his daughter retains any legal

ownership interest in the property, or that Ms. Fokina would not have the legal right to sell the

property. *Id.* Mr. Fokin also does not indicate he would initiate litigation in an attempt to block

or oppose Ms. Fokina's sale of the Subject Property. *Id.* Ms. Fokina fails to point to any

evidence, beyond speculation, indicating there is a legal bar to sale of the property, or that

litigation would be required to sell the property. Accordingly, she fails to establish error.

Finally, Ms. Fokina contends that "the record does not support a finding that [she] would

realize an amount greater than the resource limit, after legal fees, costs, and other expenses

associated with selling the Subject Property, which is located in another country, are deducted."

Dkt. 10 at 16-17. If illiquid property such as land cannot be converted into cash in twenty days,

it "is valued at the price the property can reasonably be expected to sell for on the open market in the particular geographic area involved; minus … any encumbrances." 20 C.F.R. §416.1202(c)(2)(i)-(ii).  Here, Ms. Fokina herself indicates that the property is worth $20,000.00 and that there are no encumbrances.  Tr. 37.  Even if it were proper for the Court to consider expenses associated with the sale, Ms. Fokina presents no evidence, other than speculation, that expenses would deplete the profit from the sale of a $20,000.00 property such that she would receive less than the resource limit.  Accordingly, the Court cannot find the ALJ was unreasonable in concluding the Subject Property was a countable resource that exceeds the resource limit allowable to qualify for SSI.

In sum, the ALJ reasonably concluded that Ms. Fokina alone has retained ownership of the Subject Property since 1998, that she has retained the right, power and authority to liquidate that property, and that the property constituted an excess resource rendering her ineligible to receive SSI benefits.  Tr. 27.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 23rd day of August, 2017.

The Honorable Richard A. Jones
United States District Judge

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

ORDER AFFIRMING THE
COMMISSIONER'S FINAL DECISION AND
DISMISSING THE CASE WITH PREJUDICE
- 9